

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-16-00279-CV

___

**IN THE INTEREST OF S.V. AND D.V., MINOR CHILDREN**

___

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 9361, Honorable Edward Lee Self, Presiding

___

December 30, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

J.H., appellant and mother of S.V. and D.V., appeals from an order terminating her parental rights to those children. The two children were born in August 2012 and March 2014, respectively.[1] Through a single issue, she contends that the evidence was legally and factually insufficient to support the finding that termination was in the best interest of the children. We affirm.

The pertinent standards of review are described in *In re K.M.L.*, 443 S.W.3d 101 (Tex. 2014) and *In re K.V.*, No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091 (Tex. App—Amarillo October 11, 2016, no pet.) (mem. op.). In applying it, we also compare

___

[1] The children's father voluntarily relinquished his rights and did not appeal.

the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).[2]

Next, appellant did not question the sufficiency of the evidence to support termination on the statutory grounds found to exist by the jury. Those grounds were that J.H. 1) knowingly placed or allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2016), 2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, *id.* § 161.001(b)(1)(E), and 3) failed to comply with the provisions of a court order that specifically established the steps necessary to obtain the return of the children. *Id.* § 161.001(b)(1)(O). The evidence relating to the existence of those grounds may be considered in assessing the best interests of the children. *In re C.H.*, 89 S.W.2d 17, 28 (Tex. 2002).

The record before us held the following evidence.

J.H. was twenty-three years old at the time of trial. She had three children, but only S.V. and D.V. were part of this termination suit. The youngest, C.G., was also removed from her, though.[3] J.H. began her drug use with marijuana at age fifteen and

---

[2] Appellant argued that the factors guiding our decision are those found in § 263.307 of the Texas Family Code. The factors listed in the statute appear under a section labelled "Factors in Determining Best Interest of Child" and are to be considered "by the court and the department in determining whether the child's parents are willing and able to provide the child with a safe environment." TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2016). The factors itemized in *Holley v. Adams* have never been deemed exclusive when assessing whether the best interests of the child warrant termination of the parent child relationship. Furthermore, various of the factors mentioned in *Holley* fall outside the scope of those expressed in § 263.307(b). Yet, assuming *arguendo* that § 263.307(b) applies to a termination proceeding, they too will be considered here if developed by the evidence. *See In re A.C.Y.*, No. 04-16-00445-CV, 2016 Tex. App. LEXIS 11543, at *39-40 (Tex. App.—San Antonio October 26, 2016, no pet.) (mem. op.) (considering the factors in § 263.307(b) when weighing the best interests of the child).

[3] C.G. is a half-sister to S.V. and D.V. J.H. apparently lived with C.G.'s father, G.G., at the time of trial. However, J.H. denied knowing G.G. when asked about him by a representative of the Texas

proceeded to take cocaine by age eighteen. Though she would endeavor to quit, her efforts would inevitably fail. More importantly, the children were affected by it.

C.G. tested positive for drugs immediately before she was removed. J.H. blamed this on her sister, A., who allegedly exposed the child when ingesting methamphetamine. By that time, though, J.H.'s own drug habit had resulted in harm to D.V. Using them during her pregnancy caused her son to be born from twelve to sixteen weeks prematurely. According to an attending physician, J.H. appeared to be under the influence of intoxicants at the time. When born, the child suffered from underdeveloped lungs and other medical and developmental issues, which necessitated critical attention. Though the medical conditions ameliorated themselves somewhat, the two year old still suffered from respiratory problems and asthma at time of trial.

Other instances of J.H endangering D.V. included foregoing prenatal care. So too did she expose the asthmatic child to cigarette smoke during visits, an act that at least one physician had warned her against. According to the evidence, D.V. would return from his visits with J.H. smelling of smoke, wheezing, and extremely tired.[4]

Added to the foregoing are instances of J.H.'s instability. Comprising them were a lack of consistent employment and housing. So too did she engage in criminal activity. According to the record, J.H. had been prosecuted and placed on probation for assault (which was committed in S.V.'s presence), forging a prescription for hydrocodone pills, and burglary. That parents who commit criminal acts endangered their children was a matter conceded by J.H. Furthermore, J.H.'s relationships with

---

Department of Family and Protective Services. Understandably, this was of concern to the representative. Furthermore, the representative discovered that the local police had appeared at the home periodically in response to domestic disturbance calls.

[4] In one instance, the boy returned from visiting J.H. with a burn on the bottom of his foot.

others were intermixed with volatility, as well. Apparently, police had often been called to investigate complaints regarding J.H.'s involvement in fights.

The record further depicted that S.V. suffered from "night terrors" and "struggle[ed] with being able to sleep through the night" before being removed from J.H. Though the events grew less frequent after her removal and placement with foster parents, the child still experiences them. As for her environment, S.V. was said to need stability, consistency, and reduced stress. She gained those through living with her current foster parents, whom she had bonded with and came to call mother and father. She called her biological mother by her first name, though. S.V.'s foster parents also had long range plans for the child and the financial ability to effectuate them. S.V. also was described as happy at the time of trial, though she still cared for J.H.

D.V. also lived with foster parents who understood his medical needs, had the capability of addressing them, and expressed an interest in maintaining a long-term relationship with the child. They and the child had bonded. His foster parents not only allowed D.V.'s youngest sibling to live with them but also arranged with S.V.'s foster parents to allow the children continued access to each other.

Other evidence indicated that J.H. interacted well with the children during supervised visits. So too had she completed various programs to gain the return of her offspring. Yet, one witness opined that though J.H. completed the courses, she had not implemented lessons learned from them. And, at one point it was thought that her progress was sufficient to warrant the return of her children. But, her continued drug use again resulted in their removal; that is, she tested positive for using both

4

methamphetamine and cocaine.[5]  When the children were taken at that time in December of 2015, they were found outside insufficiently dressed for the climate.  D.V. wore clothes too small for him and appeared dirty.  Other evidence indicated that during the period in which she possessed her children, J.H. exhibited delay in securing services for D.V., who had a continuing need for physical and speech therapy.  D.V.'s foster parents had the financial means to assure that he received the needed therapeutic help.

A child's exposure to a parent's drug use is evidence that can support a finding that termination is in the best interest of the child.  *See In re A.C.Y.,* No. 04-16-00445-CV, 2016 Tex. App. LEXIS 11543, at *38-40 (Tex. App.—San Antonio October 26, 2016, no pet.) (mem. op.); *In re. J.J.*, No. 07-13-00117-CV, 2013 Tex. App. LEXIS 11194, at *20-27 (Tex. App.—Amarillo August 29, 2013, no pet.) (mem. op.).  The same is true of familial dysfunction and instability. *See In re A.C.Y.*, 2016 Tex. App. LEXIS 11543, at 36-40.  We have that here, and more.  Considering the evidence and comparing it to the standards of review and relevant legal factors considered in cases such as this, the jury could have reasonably formed a firm belief or conviction that termination of J.H.'s rights was in the best interests of S.V. and D.V.  Accordingly, we affirm the trial court's judgment.

Per Curiam

---

[5] J.H.'s penchant for resuming her drug abuse was a major concern of the Department and influenced its decision that termination was in the best interests of the children.